UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LONDELL BOND, | : | |
| Plaintiff, | : | Civ. No. 23-3411 (RBK) (EAP) |
| v. | : | |
| WARDEN CUZZUPE, et al., | : | **OPINION** |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

## I.  INTRODUCTION

Plaintiff, Londell Bond ("Plaintiff" or "Bond"), is a former pretrial detainee who, at one time, was detained at the Salem County Jail in Woodstown, New Jersey. He is now incarcerated at S.C.I. Dallas in Dallas, Pennsylvania. Plaintiff is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. (*See* ECF 1). Plaintiff has also filed a motion for the appointment of *pro bono* counsel. (*See* ECF 2).

This Court must screen the allegations of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, Plaintiff's complaint shall proceed in part. Plaintiff's motion for the appointment of *pro bono* counsel will be denied without prejudice.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The factual allegations of Plaintiff's complaint shall be construed as true for purposes of this screening opinion. Plaintiff names the following as Defendants in this action:

1. Cuzzupe – Warden of the Salem County Jail;

2. Nobles – Captain at the Salem County Jail;

3. Kathy Crawford – Lieutenant at the Salem County Jail;

4. Welch – Lieutenant at the Salem County Jail;

5. Finnegan – Deputy Correctional Officer at the Salem County Jail;

6. John Doe – Lieutenant at the Salem County Jail;

7. John Doe – Deputy Correctional Officer at the Salem County Jail;

8. John Doe – Medical Doctor at the Salem County Jail;

9. Woodside – Nurse at the Salem County Jail;

10. Mecholsky – Nurse at the Salem County Jail; and

11. John/Jane Doe – Medical Director/Medical Provider at the Salem County Jail.

(ECF 1 at 8-10).

On July 23, 2021, a lockdown occurred on Plaintiff's housing unit at the Salem County Jail. (*See* ECF 1 at 10). Plaintiff asked Officer Rowe for toilet paper during this lockdown. (*See id.*). Officer Rowe handed toilet paper to inmates, but told Plaintiff he would get some during the next round of distribution. (*See id.* at 11). However, at that time, disrespectful comments from inmates were hurled at Officer Rowe. (*See id.*). Defendant Nobles addressed the unit threatening weekly lockdowns if the disrespectful behavior continued. (*See id.*). Plaintiff then asked Defendant Nobles for toilet paper but was refused. (*See id.*). Other inmates then began to respond to Defendant Nobles' denial of toilet paper. (*See id.*).

Subsequently, Defendant Welch approached Plaintiff's cell door screaming. (*See id.*). Plaintiff was shocked, confused and turned towards his cellmate. However, at no time did Plaintiff say anything, show signs of aggression, make sudden movements, resist or create a

disturbance. (*See id.*). Nevertheless, Defendant Welch entered Plaintiff's cell followed by Defendant Finnegan and two John Doe officers. (*See id.* at 12). The four officers took Plaintiff to the ground. (*See id.*). One John Doe Officer restrained Plaintiff's left arm, while Defendant Welch and Defendant Finnegan restrained Plaintiff's right arm. (*See id.*). Another John Doe Officer restrained Plaintiff's legs. (*See id.*). Even though Plaintiff was subdued, Defendant Welch and Defendant Finnegan began punching Plaintiff. (*See id.*). This assault included Defendant Finnegan punching Plaintiff in the face and an attempt to gouge Plaintiff's eye. (*See id.*). Plaintiff was ordered to turn on his stomach, however, due to Plaintiff's positioning and pinning, this was impossible to accomplish. (*See id.*). Plaintiff was then trampled and kicked. (*See id.*). Plaintiff was then handcuffed, dragged out by a John Doe Officer who, then pushed Plaintiff face first to the floor causing Plaintiff to hit his head. (*See id.* at 12-13).

Plaintiff was taken to the infirmary where a John Doe Doctor and Jane Doe Nurse examined him. (*See id.* at 13). Plaintiff complained about eye pain during the examination. (*See id.*). That night, Plaintiff complained about ongoing pain and an inability to sleep. (*See id.*). A nurse gave Plaintiff ibuprofen and an ice pack. (*See id.*).

On July 24, 2021, Plaintiff was given an X-ray. (*See id.*). On July 25, 2021, Plaintiff informed a nurse about his continued eye pain while getting medication. (*See id.*). While Plaintiff was getting water for his medication, Defendant Finnegan told Plaintiff to "stop being a pussy." (*See id.*).

On July 26, 2021, Plaintiff informed a nurse of continued eye and arm pain. (*See id.*). Defemdant Finnegan on that same date saw Plaintiff getting his medication and commented, "nice eye." (*See id.*).

On July 27, 2021, Plaintiff reported the assault to internal affairs and photos were taken of Plaintiff's injuries. (*See id.* at 14).

On July 28, 2021, Plaintiff informed a nurse of continued eye, arm and wrist pain. (*See id.*). The nurse advised Plaintiff to use a kiosk machine to sign up for sickcall which Plaintiff did. (*See id.*). On July 30, 2021, Defendant Woodside responded to Plaintiff's request stating he would be placed on a list to see a doctor. (*See id.*). On August 2, 2021, after not hearing anything and yet still experiencing pain, Plaintiff submitted another sickcall complaint for his eye, arm and wrist pain. (*See id.*). On August 3, 2021, Defendant Mecholsky responded to Plaintiff's sickcall request stating "seen 7-23, no further treatment ordered, x-rays completed and negative." (*See id.*). However, on August 4, 2021, after Plaintiff responded to Defendant Mecholsky's message, Defendant Mecholsky messaged Plaintiff that he would be placed on the list to see a doctor. (*See id.* at 14-15).

On August 9, 2021, Plaintiff submitted a grievance as he had not yet heard anything from the medical department. (*See id.* at 15). Defendant Crawford though changed Plaintiff's grievance to a sickcall request. (*See id.*) On August 11, 2021, Plaintiff was seen by two nurses who assured Plaintiff he would be seen by a doctor. (*See id.*). On August 13, 2021, Plaintiff was seen by a doctor who ordered additional X-rays and for Plaintiff to see an outside eye specialist. (*See id.*). On August 17, 2021, additional X-rays were taken of Plaintiff's arm and wrist. (*See id.*). Plaintiff next alleges he was supposed to see an eye specialist on August 30, 2021, but was denied an opportunity to see one for unknown reasons. (*See id.*). Ultimately, at an unspecified time, Plaintiff states that an eye specialist informed Plaintiff that he would have permanent blurred vision due to his eye injuries. (*See id.* at 16).

Plaintiff next refers to an incident that occurred starting in October, 2021. On October 21, 2021, Plaintiff alleges Defendant Finnegan approached him and told him to "suck a cock" or said "cock sucker," as well as called Plaintiff a "smart nigga." (*See id.*). Plaintiff reported this incident. (*See id.*). At some unspecified date thereafter, Defendant Welch told Plaintiff, "you wanna play games with my officers, how about I start playing games with you." (*See id.*). Subsequently, in February, 2022, Defendant Welch and other officers came to Plaintiff's cell and handcuffed him to a restraint chair without any provocation from Plaintiff. (*See id.*). Plaintiff was restrained in this chair for hours. (*See id.*).

Plaintiff raises several federal constitutional claims. First, he asserts that Defendants Welch and Finnegan, along with a John Doe Officer used excessive force against him. (*See id.* at 17). Second, Plaintiff alleges that Defendants Woodside and Mecholsky, as well as John/Jane Does were deliberately indifferent to his serious medical needs by delaying medical attention to him for seventeen days. (*See id.*). Third, Plaintiff alleges Defendant Crawford violated his due process rights when she prevented Plaintiff from filing a grievance. (*See id.* at 18). Fourth, Plaintiff alleges Defendant Nobles failed to supervise his subordinates. (*See id.*). Fifth, Plaintiff alleges Defendant Cuzzupe was deliberately indifferent after being informed of the assault and medical complaints, but failed to remedy the wrongs as well as for his failure to prevent future misconduct by Defendants Finnegan and Welch. (*See id.*). Sixth, Plaintiff alleges that John Doe Officers were deliberately indifferent by witnessing Defendants Welch and Finnegan's misconduct, i.e. the assault, but did nothing to stop it. (*See id.*). Seventh, Plaintiff alleges Defendant Welch retaliated against Plaintiff by placing him in a restraint chair because Plaintiff filed a grievance about the assault. (*See id.* at 19). Finally, Plaintiff alleges Defendant Finnegan

retaliated against Plaintiff by his continued intimidation, bullying and antagonizing of Plaintiff following the assault and Plaintiff's report of the assault. (*See id.*).

### III. LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic

6

recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In this case, Plaintiff is seeking redress under 42 U.S.C. § 1983. A plaintiff may have a cause of action under § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. DISCUSSION

A. <u>Excessive Force</u>

Plaintiff brings an excessive force claim against Defendants Finnegan, Welch and a John Doe Officer. As noted above, Plaintiff was a pretrial detainee at the time the events giving rise to his excessive force claims occurred. Claims of excessive force against a defendant by a plaintiff who is a pretrial detainee are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, because pretrial detainees are not properly subject to punishment, whether cruel and unusual or otherwise. *See Dean v. Gloucester Cty.*, No. 13–5197, 2016 WL 818708, at *5 (D.N.J. Mar. 2, 2016) (citing *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010)) (remaining citation and footnotes omitted). Courts apply an objective standard when considering a pretrial detainee's claim of excessive force. *See Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). Thus, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. That objective test "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the prospective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citation omitted). Additionally, in *Kingsley*, the United States Supreme Court explained:

> A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See, e.g., Graham,* [490 U.S.] at 396, 109 S. Ct. 1865.

*Kingsley*, 576 U.S. at 397.

This Court will permit Plaintiff's excessive force claim to proceed against Defendants Finnegan, Welch and the John Doe Officer. Indeed, Plaintiff alleges sufficient facts that Defendants Finnegan's and Welch's actions against him were objectively unreasonable. He states he was not showing any signs of aggression, sudden movement or resistance to warrant being punched. Furthermore, the John Doe Officer's actions related to pushing Plaintiff face first to the floor as alleged was objectively unreasonable as alleged. Accordingly, this claim shall proceed against these three Defendants.[1]

B. <u>Deliberate Indifference to Serious Medical Needs</u>

Next, Plaintiff brings a deliberate indifference to his serious medical needs claim against Defendants Woodside, Mecholsky, and John/Jane Does for purportedly failing to treat Plaintiff's injuries. This includes delaying Plaintiff medical attention for over seventeen days after the assault. Plaintiff's claims for deliberate indifference to his serious medical needs are analyzed under the Fourteenth Amendment as Plaintiff was a pretrial detainee. *See Tapp v. Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016). To allege a Fourteenth Amendment violation, a detainee must allege that his conditions amounted to punishment. *See Bell*, 441 U.S. at 538. Punishment has

---

[1] As Plaintiff cannot serve a John Doe, he will have to name the specific officer involved in pushing Plaintiff in any amended complaint he may elect to file so that service can be effectuated.

both a subjective and an objective component – the objective component asks whether the deprivation was sufficiently serious and the subjective component asks whether the defendant acted with a sufficiently culpable state of mind. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). While the Fourteenth Amendment controls this claim, the Eighth Amendment's "deliberate indifference" standard provides a guide to what, at a minimum, is owed to pretrial detainees. *See Tapp*, 645 F. App'x at 145 n.4 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)); *see also Reavis v. Hicks*, No. 19-21711, 2020 WL 3034619, at *3 (D.N.J. June 5, 2020) (citation omitted).

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal

quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

      Plaintiff first names a John Doe doctor and Jane Doe nurse as Defendants in this claim. (*See* ECF 1 at 13). These two Defendants examined Plaintiff on July 23, 2021 after the purported assault occurred. Plaintiff complained about eye and arm pain. However, that night, Plaintiff states he was given ibuprofen and an ice pack. Furthermore, the next day, X-rays were taken. While Plaintiff may complain about the *level* of treatment he was provided by these two John/Jane Doe Defendants during that first examination, he was provided some treatment. The factual allegations as to these two unnamed Defendants do not rise to the level of deliberate indifference as alleged. Indeed, allegations of negligence or medical malpractice are not sufficient to establish a constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Estelle*, 429 U.S. at 105); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable). Here, Plaintiff alleges he received ibuprofen and then received an X-ray the next day. As alleged, these claims do not rise to the level of deliberate indifference against these two unnamed John/Jane Doe Defendants such that the deliberate indifference claim against them shall be dismissed without prejudice for failure to state a claim.

11

Plaintiff next raises a deliberate indifference claim against Defendant Woodside. The allegations against Defendant Woodside are limited to her response to Plaintiff's grievance request on July 30, 2021 that Plaintiff would be placed on a list to see a doctor. Such a response by Defendant Woodside in and of itself, without any other factual allegations does not constitute deliberate indifference. Plaintiff does not allege, for instance, that he was not placed on a list to see a doctor. Although deliberate indifference can be demonstrated by a defendant's intentional delay or denial of access to medical care for non-medical reasons, Plaintiff has not made any allegation that Defendant Woodside declined or delayed referring him to a doctor. *See Estelle*, 429 U.S. at 103-105; *see, e.g., Robinson v. Corizon Health, Inc.*, No. 17-3868, 2019 WL 448900, *9 (E.D. Pa. Feb. 5, 2019).

Plaintiff also claims Defendant Mecholsky was deliberately indifferent to his serious medical needs. To reiterate the factual allegations in the complaint, Defendant Mecholsky responded to Plaintiff's sickcall request on August 3, 2021 stating that Plaintiff had X-rays completed that came back negative. Plaintiff though responded that this had nothing to do with the pain that he was experiencing. The next day, Defendant Mecholsky messaged Plaintiff through the kiosk system that he would be placed on a list to see a doctor. This was not a case, as alleged, where Defendant Mechoolsky purportedly prevented Plaintiff from receiving necessary medical treatment for his serious medical needs. Indeed, Plaintiffs does not allege that Defendant Mecholsky even failed to refer him to a doctor.

Thus, for the foregoing reasons, all of Plaintiff's deliberate indifference claims to his serious medical needs are dismissed without prejudice for failure to state a claim upon which relief may be granted.

C. Filing a Grievance

Next, Plaintiff brings a claim against Defendant Crawford because she purportedly prevented him from filing a administrative grievance. As noted in *supra* Part II, Defendant Crawford purportedly changed a grievance that Plaintiff filed regarding his medical care to a sick call request. Thus, he alleges that his due process rights were violated by this change.

This claim will be dismissedout with prejudice. Indeed, any purported violation of a prison grievance procedure does not give rise to a due process violation. *See Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 81 (3d Cir. 2014) ("Violations of [prison] grievance procedures do not give rise to a cognizable claim under section 1983.") (citation omitted). This is what Plaintiff essentially alleges with respect to Defendant Crawford.

D. Failure to Supervise Against Defendant Nobles

In Plaintiff's next claim, he alleges that Defendant Nobles failed to supervise his subordinates. This claim presumably relates to the excessive force Plaintiff suffered from officers serving under Defendant Nobles.

Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). There are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, a defendant may be sued as a policy maker "if it is shown that such defendant, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of

13

liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Plaintiff's complaint fails to state a supervisory liability claim against Defendant Nobles under either theory of supervisory liability. There are no allegations stated with facial plausibility that Defendant Nobles maintained a policy, custom or practice that directly caused any potential constitutional harm. Furthermore, there is no indication that Defendant Nobles participated in or directed others to potentially violate Plaintiff's constitutional rights. As such, Plaintiff's claims against Defendant Nobles shall be dismissed without prejudice for failure to state a claim.

E. Supervisory Liability Against Cuzzupe

Plaintiff has also brought a supervisory liability claim against the Warden of the Salem County Jail, Cuzzupe. Initially, Plaintiff asserts Cuzzupe is liable based on his purported deliberate indifference for failing to respond to Plaintiff's grievances. "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (a plaintiff "must show that a policymaker for the [municipality] authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence." (citation omitted)).

"The filing of grievances, alone, is insufficient to show the actual knowledge necessary for personal involvement." *Miller v. Trometter,* No. 11–811, 2012 WL 5933015, at *13 (M.D. Pa. Nov. 27, 2012) (citing *Rode,* 845 F.2d at 1207). Thus, "prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them." *Miller,* 2012 WL 5933015, at *13 (citing *Pressley v. Beard,* 266 F. App'x 216 (3d Cir. 2008) (per curiam); *Hughes v. Smith,* 237 F. App'x 756, 758 (3d Cir. 2007) (per curiam)) (other citations omitted); *see also Robinson v. Green,* No. 12–1212, 2012 WL 5401079, at *3 (E.D. Pa. Nov. 5, 2012); *Mercado v. Ellis,* No. 11–6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiffs only claims against the named defendants are based on their failure to investigate or respond to Plaintiffs letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (internal quotation marks and citations omitted).

To the extent Plaintiff relies on Cuzzepe's failure to respond to his grievances after the fact for the purported excessive force used, that alone is insufficient to state a constitutional claim. Indeed, the claim appears to be based on facts from a one-time incident occurring in July, 2021.

Furthermore, for the reasons stated *supra*, Plaintiff has failed to allege a constitutional claim related to the medical care (or lack thereof) he received. Any purported failure on the part of Cuzzepe in failing to respond to such grievances would also not give rise to § 1983 claim because there was no underlying constitutional violation alleged based on the facts submitted by Plaintiff in his complaint. *See, e.g.*, *McDougal v. Orkies*, No. 17-469, 2017 WL 2778642, at *2 (S.D. Ill. June 27, 2017) (citing *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015)) ("Without

an underlying constitutional violation to turn a blind eye to, [Defendant's] alleged failure to respond to Plaintiff's letters cannot constitute deliberate indifference."); *see also Stattuck-Knaebel v. Lewis*, No. 18-212, 2019 WL 1060034, at *8 (E.D. Mo. Mar. 6, 2019) ("Since plaintiff's underlying complaints, contained in his kites to Warden Lewis and Assistant Warden Reed, do not amount to constitutional violations, the failure by Lewis and Red to respond likewise do not constitute a violation of plaintiff's constitutional rights."); *Jones-El v. Wright*, No. 16-502, 2018 WL 9811898, at *17 (E.D. Va. Sept. 28, 2018) (citing *Scott v. Clarke*, 64 F. Supp. 3d 813, 842 (W.D. Va. 2014)) ("[T]o hold [Defendants] liable for failing to respond to continuing violations of Plaintiff's constitutional rights that they learned about through the grievance process, Plaintiff must show an underlying violation of Plaintiff's constitutional rights upon which [Defendants] failed to act."). Thus, Plaintiff's claims against Cuzzupe are dismissed without prejudice for failure to state a claim upon which relief may be granted.

F. <u>Failure to Intervene Against John Does</u>

Plaintiff next claims that two John Doe officers failed to intervene to protect him from the excessive force he purportedly sustained by Defendants Finnegan and Welch. The Third Circuit has held "that a corrections officer's failure to intervene in a beating can be the basis of liability . . . under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). At this screening stage, the Court will permit Plaintiff's claim against the two John Does for failing to intervene to proceed past screening in light of Plaintiff's allegation that they were involved in restraining Plaintiff while the purported excessive force occurred. However, as discussed *supra* in note 1, for service to be effectuated on the John Doe Defendants, Plaintiff will need to name them expressly in any amended pleading.

G. Retaliation

Finally, Plaintiff brings a retaliation claim against both Defendants Welch and Finnegan. Each claim requires different analysis. They will be considered separately.

i. *Retaliation Claim Against Defendant Welch*

Plaintiff alleges that Welch retaliated against him for filing a grievance about the assault by placing him in a restraint chair. "A prisoner alleging retaliation must show: (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiff's filing of a grievance constitutes constitutionally protected conduct. *See DeFranco v. Wolfe*, 387 F. App'x 147, 157 (3d Cir. 2010). Furthermore, Defendant Welch's order to put Plaintiff in a placement in a restraint chair may constitute an adverse action. *See Whaling v. Erie Cnty. Prison*, No. 08-210, 2009 WL 5813857, at *11 (W.D. Pa. Nov. 30 2009), *report and recommendation adopted in part*, 2010 WL 430847 (W.D. pa. Feb. 4, 2010), *partial reconsideration granted on other grounds*, 2010 WL 2574062 (W.D. Pa. June 22, 2010) (stating plaintiff sufficiently alleged a prima facie case of retaliation noting that placement in a restraint chair is sufficient to establish an adverse action).

Finally, to show a causal connection, a plaintiff must show that the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (citations omitted). Such causal connection facts usually fall into one of two categories; indeed:

17

> [t]o establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco*, 387 F. App'x at 154. While temporal proximity is relevant to retaliation, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002), "'[t]he mere passage of time is not legally conclusive proof against retaliation.' " *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

In this case, Plaintiff has sufficiently alleged a causal connection. Plaintiff alleges Defendant Welch threatened him by specifically expressing Plaintiff's complaints about his officers, coupled with his subsequent placement in a restraint chair sometime thereafter. At this early screening stage, those are sufficient allegations to warrant proceeding this retaliation claim against Defendant Welch past screening.

    ii.    *Retaliation Claim Against Finnegan*

Plaintiff's final claim is that Defendant Finnegan retaliated against him through intimidation and bullying after Plaintiff report the assault. Defendant Finnegan's verbal taunts and barbs as alleged and construed as true for purposes of this screening opinion are certainly beneath the dignity of any correctional officer.  However, as alleged, them, in and of themselves. do not constitute adverse action to support a retaliation claim. *See Hagan v. Rogers,* No. 06–4491, 2010 WL 5343188, at *9 (D.N.J. Dec.20, 2010) (citing *Gay v. City of Phila.,* No. 03–5358, 2005 WL 1844407, at *5 (E.D .Pa. Aug.2, 2005); *Hill v. Chalanor,* 128 F. App'x 187, 189 (2d

Cir.2005); *Gill v. Pidlypchak,* 389 F.3d 379, 383 (2d Cir.2004); *Maclean v. Secor,* 876 F. Supp. 695, 698 (E.D.Pa. 1995); *Prisoners' Legal Ass'n v. Roberson,* 822 F. Supp. 185, 189 (D.N.J.1993)). Thus, Plaintiff's retaliation claim against Defendant Finnegan will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### V.    MOTION FOR APPPOINTMENT OF PRO BONO COUNSEL

Plaintiff has also filed a motion for the appointment of pro bono counsel. (*See* ECF 2). Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). To appoint pro bono counsel, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Furthermore, in determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155–56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144–45 (3d Cir. 2011) (reiterating the *Tabron* factors). Additionally, the power to grant appointment of counsel lies solely with the discretion of this Court. *See Tabron*, 6 F.3d at 155.

Upon analyzing these factors, the Court will deny Plaintiff's motion to appoint pro bono counsel without prejudice at this time. For example, this case does not seem necessarily complex. Plaintiff should be able to pursue this case on his own, at least minimally at this early screening stage. If, however, circumstances change, Plaintiff may file another motion to appoint pro bono counsel for reconsideration anew.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's complaint shall proceed in part. Plaintiff's excessive force claims against Defendants Welch, Finnegan and a John Doe Officer shall proceed. Plaintiff's claims against two John Doe Officers for failure to intervene shall also proceed. Plaintiff's retaliation claim against Defendant Welch shall also proceed. Plaintiff's deliberate indifference to his serious medical needs claim against several Defendants is dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff's claim against Defendant Crawford for interfering in Plaintiff's grievance is dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff's supervisory liability claims against Defendants Cuzzupe and Nobles are dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff's retaliation claim against Finnegan is dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff's motion for the appointment of pro bono counsel (ECF 2) is denied without prejudice. An appropriate order will be entered.


DATED: February 1, 2024                         s/ Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge